**Moharram ELGAGHIL, Appellant,**

v.

**TARRANT COUNTY JUNIOR COLLEGE, Appellee.**

No. 2–99–133–CV.

Court of Appeals of Texas, Fort Worth.

Sept. 28, 2000.

Rehearing Overruled Dec. 21, 2000.

---

Wes Dauphinot, Fort Worth, for Appellant.

Law, Snakard & Gambill, P.C. and Thos. H. Law, Dabney D. Bassel, Kelley B. Hill, Fort Worth, for Appellee.

Panel A: DAY and GARDNER, JJ.; and WILLIAM BRIGHAM, J. (Retired, Sitting by Assignment).

## OPINION

SAM J. DAY, Justice.

In this employment discrimination case, Moharram Elgaghil appeals the trial court's award of summary judgment in favor of Tarrant County Junior College ("TCJC") on his claims brought under chapter 21 of the Texas Labor Code. TEX. LAB. CODE ANN. §§ 21.001–.556 (Vernon 1996 & Supp.2000). In his lawsuit, Elgaghil claimed that TCJC failed to promote him because of his national origin and retaliated against him for filing an employment discrimination claim. Elgaghil also alleged TCJC engaged in an unlawful employment practice that had a disparate impact on his protected class, Egyptians.

Elgaghil raises two issues on appeal. First, he alleges the trial court erred in granting TCJC's motion for summary judgment on his employment claims. Second, he contends the trial court erred in granting TCJC's motion for summary judgment on the issue of attorney's fees.

Because the trial court did not err in granting TCJC's motions for summary judgment, we affirm.

## BACKGROUND

Two years after receiving his master's degree in mechanical engineering from Cal–State Fullerton in 1983, Elgaghil secured a position as boiler room operator for the physical plant department at TCJC's Northeast Campus. In 1993, Elgaghil interviewed for three upper level management positions at TCJC, but the school selected other candidates to fill the positions.

On January 18, 1994, Elgaghil filed a complaint with the Equal Employment Opportunity Commission ("EEOC") contending that TCJC had unlawfully discriminated against him based on his national origin. After an investigation, the EEOC decided that no action would be taken in connection with Elgaghil's allegations and issued its right to sue letter in 1996. On January 2, 1996, Elgaghil filed his original petition alleging that TCJC had discriminated against him on the basis of national origin on three occasions: (1) when he was not selected for the position of assistant director of physical plants, Northeast Campus, in June 1993; (2) when he was not selected for the position of plant superintendent, Northwest Campus, in October 1993; and (3) when he was not selected for the position of plant superintendent, Northeast Campus, in November 1993.

Elgaghil continued to apply for upper management positions at TCJC. In July and November of 1996, Elgaghil applied for two plant superintendent positions but did not receive either job. In early 1997, he submitted applications for the positions of plant superintendent and construction representative. Again, he was not selected for either position.

In 1998, Elgaghil filed an amended petition adding allegations that TCJC had retaliated against him for filing his EEOC complaint. Specifically, he alleged that TCJC had retaliated by not selecting him

for any of the four additional management positions he applied for in 1996 and 1997.[1] He also alleged that one of his supervisors had retaliated against him by making false allegations regarding his job performance, verbally harassing him, and making fun of his accent. Elgaghil also added a disparate impact claim to his lawsuit, alleging that TCJC's hiring and promotion policies had a disparate impact on Egyptians.

On November 12, 1997, TCJC filed a counterclaim requesting attorney's fees under section 21.259 of the labor code. *Id.* § 21.259(a) (Vernon 1996). TCJC also filed a motion for summary judgment on Elgaghil's claims, which included the following grounds:

- TCJC hired the best qualified applicants to fill the positions in question, thus establishing a legitimate non-discriminatory reason for not choosing Elgaghil;

- there was no evidence that the non-discriminatory reason offered by TCJC was a pretext for discrimination;

- Elgaghil was unable to meet his prima facie burden to establish his disparate impact claim because there was no evidence that TCJC had engaged in an employment practice that had a disparate impact on Egyptians, Elgaghil's protected class;

- Elgaghil was unable to meet his prima facie burden to establish his retaliation claim because there was no evidence of a causal connection between a protected activity and an adverse employment decision; and

- Elgaghil failed to exhaust his administrative remedies on the new claims raised in his amended petition.

Elgaghil filed a response addressing each ground raised by TCJC. Elgaghil attached numerous documents in support of his response, including his own affidavit and resume, the resumes and employment applications of the individuals hired to fill the positions he sought, and portions of deposition testimony from George Richardson, the individual responsible for interviewing applicants and making hiring recommendations at TCJC.

On July 21, 1998, the trial court granted TCJC's motion for summary judgment on Elgaghil's claims by general order. Elgaghil and TCJC then filed cross-motions for summary judgment on TCJC's claim for attorney's fees. The trial court granted TCJC's second motion for summary judgment, denied Elgaghil's motion, and entered a final order awarding $ 10,000 in attorney's fees to TCJC.

## STANDARD OF REVIEW

■ To prevail on its motion for summary judgment, TCJC was required to prove there was no genuine issue of material fact and that it was entitled to judgment as a matter of law. *See Ryland Group, Inc. v. Hood,* 924 S.W.2d 120, 121 (Tex.1996). In reviewing a summary judgment, we accept as true all evidence favoring the nonmovant, indulging every reasonable inference and resolving all doubts in the nonmovant's favor. *See Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). A defendant is entitled to summary judgment only if it conclusively negated at least one element of the plaintiff's cause of action or conclusively established all of the elements of an affirmative defense. *See Cathey v. Booth,* 900 S.W.2d 339, 341 (Tex.1995). When the trial court's order granting summary judgment does not specify the

---

1. TCJC did promote Elgaghil to the position of chief plant operator in January 1996 but it is not clear from the record whether he applied for this position.

ground or grounds relied on for its ruling, summary judgment will be affirmed on appeal if any of the theories advanced are meritorious. *See Star–Telegram, Inc. v. Doe,* 915 S.W.2d 471, 473 (Tex.1995).

## UNLAWFUL EMPLOYMENT DISCRIMINATION

Under Chapter 21 of the labor code, it is unlawful for an employer to discriminate against an employee with respect to compensation or the terms, conditions, or privileges of employment because of race, color, disability, religion, sex, or national origin. TEX. LAB. CODE ANN. § 21.051 (Vernon 1996). This chapter also prohibits retaliation by an employer against a person who files a charge of employment discrimination. *See id.* § 21.055(2).

■ The Texas Legislature modeled chapter 21 after federal law for the express purpose of carrying out the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments. *See id.* § 21.001(1); *Soto v. El Paso Natural Gas Co.,* 942 S.W.2d 671, 677 (Tex.App.—El Paso 1997, writ denied); *Ewald v. Wornick Family Foods Corp.,* 878 S.W.2d 653, 658 (Tex.App.—Corpus Christi 1994, writ denied). Consequently, when reviewing an issue brought under chapter 21, we may look not only to cases involving the state statute, but also to cases interpreting the analogous federal provisions. *See Caballero v. Central Power and Light Co.,* 858 S.W.2d 359, 361 (Tex.1993); *Mackey v. U.P. Enters., Inc.,* 935 S.W.2d 446, 455 (Tex.App.—Tyler 1996, no writ).

## DID THE TRIAL COURT ERR IN GRANTING SUMMARY JUDGMENT ON ELGAGHIL'S DISCRIMINATION CLAIMS?

■ Elgaghil first contends that TCJC unlawfully discriminated against him on the basis of national origin by failing to select him for the seven upper management positions he applied for in 1993, 1994, 1996, and 1997. When an individual infers discrimination from an employer's failure to promote him, we apply a modified version of the burden-shifting analysis articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). *See Scales v. Slater,* 181 F.3d 703, 709 (5th Cir.1999). Thus, to establish a prima facie case of employment discrimination based on the employer's failure to promote, a plaintiff must show that (1) he is a member of a protected class, (2) he sought and was qualified for an available employment position; (3) despite his qualifications, plaintiff was not selected for the position, and (4) the employer selected someone not in plaintiff's protected class or continued to seek applicants with the plaintiff's qualifications. *See id.; Bernard v. Gulf Oil Corp.,* 890 F.2d 735, 745 (5th Cir.1989), *cert. denied,* 497 U.S. 1003, 110 S.Ct. 3237, 111 L.Ed.2d 748 (1990). Once the plaintiff establishes a prima facie case, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for its decision. *See EEOC v. Louisiana Office of Community Servs.,* 47 F.3d 1438, 1443 (5th Cir.1995). If the employer does so, the burden shifts back to the plaintiff to prove that the employer's articulated reasons are untrue and were given as a mere pretext for unlawful discrimination. *See id.; Davis v. Chevron U.S.A., Inc.,* 14 F.3d 1082, 1087 (5th Cir.1994).

■ As grounds for summary judgment on Elgaghil's discrimination complaint, TCJC alleged, among other things, that TCJC hired more qualified applicants to fill the positions in question and that there was no evidence that the non-discriminatory reason offered by TCJC was a pretext for discrimination. In reviewing TCJC's

no-evidence summary judgment ground, we apply the same legal sufficiency standard as we apply in reviewing a directed verdict. *See Moore v. K Mart Corp.*, 981 S.W.2d 266, 269 (Tex.App.—San Antonio 1998, pet. denied). Thus, we review the evidence in the light most favorable to Elgaghil, disregarding all contrary evidence and inferences. *See Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997), *cert. denied*, 523 U.S. 1119, 118 S.Ct. 1799, 140 L.Ed.2d 939 (1998); *Moore*, 981 S.W.2d at 269. Because TCJC alleged there was no evidence of pretext, an essential element of Elgaghil's discrimination cause of action, the burden was on Elgaghil to point out more than a scintilla of summary judgment evidence raising a genuine issue of material fact on this element. *See* Tex. R. Civ. P. 166a(i); *Havner*, 953 S.W.2d at 711.

▮ To establish a fact question on the issue of pretext, the non-movant must present evidence indicating that the non-discriminatory reason given by the employer is false or not credible, and that the real reason for the employment action was unlawful discrimination. *See Scales*, 181 F.3d at 709; *EEOC*, 47 F.3d at 1443. A plaintiff can avoid summary judgment on this element if the evidence, taken as a whole, creates a fact issue as to whether each of the employer's stated reasons was not what actually motivated the employer *and* creates a reasonable inference that national origin was a determinative factor in the actions the plaintiff is now complaining about. *See Grimes v. Texas Dep't of Mental Health and Mental Retardation*, 102 F.3d 137, 141 (5th Cir.1996).

▮ Assuming arguendo that Elgaghil made out a prima facie case of discrimination, TCJC's explanation that it hired individuals who were more qualified than he rebuts any presumption of discrimination and constitutes a reasonable, non-discrimi-

natory reason for TCJC to reject him. *See Gonzalez v. Carlin*, 907 F.2d 573, 578 (5th Cir.1990). Elgaghil conceded that TCJC met its burden of production, but argues that he presented some evidence to raise a fact question as to whether TCJC's explanation was merely pretextual. Specifically, Elgaghil points to his affidavit in which he contends that David Hoelke, a fellow TCJC employee, said that Elgaghil "would never get an administrative level position ... because TCJC was not ready to hire a foreigner." Elgaghil also alleges that Richardson's deposition testimony establishes that Richardson "did not like [Elgaghil's] foreign accent which, according to Mr. Richardson, played a role in determining who got the positions in question."

▮ After reviewing the evidence cited by Elgaghil, we conclude that his contention is without merit. In order for workplace comments to provide sufficient evidence of discrimination, those comments must be (1) related to plaintiff's protected class, (2) proximate in time to the adverse employment decision, (3) made by an individual with authority over the employment decision at issue, and (4) related to the employment decision at issue. *See Krystek v. University of S. Miss.*, 164 F.3d 251, 256 (5th Cir.1999). Stray remarks made in the workplace by non-decision makers, without more, are not evidence of the employer's intent to discriminate. *See Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41–42 (5th Cir.1996). Assuming for summary judgment review that Hoelke actually made this remark, Elgaghil produced no evidence that Hoelke was a decision maker or that he was in any position to influence the individuals making the promotion decisions. As a result, this stray remark is not evidence that TCJC's promotion decisions were based on unlawful discrimination. *See Krystek*, 164 F.3d at 256.

■ Regarding Elgaghil's contention that Richardson "didn't like his accent," this assertion is not an accurate representation of Richardson's testimony and thus will not support his contention.[2] The only other evidence Elgaghil offers to establish pretext is his own speculation that TCJC lied about its reasons for refusing to promote him. However, an employee's subjective belief that an employer has given a false reason for its employment decision is not competent summary judgment evidence. *See EEOC,* 47 F.3d at 1448; *Johnson v. Alcatel Network Sys., Inc.,* 963 F.Supp. 599, 604 (N.D.Tex.1996). Thus, none of the evidence that Elgaghil relies on supports his contention that TCJC discriminated against him on the basis of his national origin. Because Elgaghil failed to raise a genuine fact question on the issue of whether TCJC's stated reason for its failure to promote him was pretextual, the trial court did not err in granting TCJC's no-evidence motion for summary judgment on Elgaghil's discrimination claim.

### DID ELGAGHIL FAIL TO EXHAUST HIS ADMINISTRATIVE REMEDIES?

■ Having disposed of Elgaghil's discrimination claims, we now consider TCJC's allegation that Elgaghil was jurisdictionally barred from bringing his disparate impact and retaliatory claims. In its motion for summary judgment, TCJC complained that the trial court lacked jurisdiction to consider either of these causes of action because they were not raised in Elgaghil's original EEOC complaint. Elgaghil, however, contended that these claims were not jurisdictionally barred because they were reasonably related to the contentions raised in his EEOC charge.

■ It is well-settled that a trial court is without jurisdiction to consider claims brought under chapter 21 or Title VII unless the aggrieved party has first exhausted his administrative remedies by filing a complaint with the Texas Commission on Human Rights ("TCHR") or EEOC. *See National Ass'n of Gov't Employees v. City Pub. Serv. Bd.,* 40 F.3d 698, 711 (5th Cir.1994); *Clark v. Kraft Foods, Inc.,* 18 F.3d 1278, 1279 (5th Cir.1994); *Schroeder v. Texas Iron Works, Inc.,* 813 S.W.2d 483, 486–87 (Tex.1991). Thus, causes of action filed under either statute generally may raise only the specific issue made in the employee's administrative complaint and "any kind of discrimination like or related to the charge's allegations." *Fine v. GAF Chem. Corp.,* 995 F.2d 576, 578 (5th Cir.1993) (quoting *Fellows v. Universal Restaurants, Inc.,* 701 F.2d 447, 451 (5th Cir.1983)).

In addressing a case factually similar to this one, the Fifth Circuit has carved out an exception to the exhaustion of remedies rule. In *Gupta v. East Tex. State Univ.,* 654 F.2d 411 (5th Cir.1981), the plaintiff filed an EEOC charge alleging national origin and religious discrimination. In the lawsuit, the plaintiff claimed that after he filed a complaint with the EEOC, his employer retaliated against him. *Id.* at 413. However, the plaintiff did not file an additional EEOC charge alleging retaliatory discharge. *See id.*

On appeal to the Fifth Circuit, the *Gupta* court questioned on its own motion whether the district court had jurisdiction over the plaintiff's retaliation claim. The court answered that issue in the affirmative, reasoning:

---

**2.** During Richardson's deposition, he stated that he gave Elgaghil a "2" rating during the interview process on the categories "ability to communicate" and "diction" because Elgaghil's manner of speech was difficult to understand, in part because of his accent. Richardson did not say that he "disliked" Elgaghil's accent.

[I]t is unnecessary for a plaintiff to exhaust administrative remedies prior to urging a retaliation claim growing out of an earlier charge; the district court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the court.

There are strong practical reasons and policy justifications for this conclusion. It is the nature of retaliation claims that they arise after the filing of the EEOC charge. Requiring prior resort to the EEOC would mean that two charges would have to be filed in a retaliation case—a double filing that would serve no purpose except to create additional procedural technicalities when a single filing would comply with the intent of Title VII.

*Id.* at 414; *see also Baker v. Buckeye Cellulose Corp.,* 856 F.2d 167, 168–69 (11th Cir.1988); *Gottlieb v. Tulane Univ.,* 809 F.2d 278, 284 (5th Cir.1987); *Goza v. Bolger,* 538 F.Supp. 1012, 1015–16 (N.D.Ga. 1982).[3] This rationale has also been applied in at least one Texas appellate court considering an employee's retaliation claim brought under state law. *See Thomas v. Clayton Williams Energy, Inc.,* 2 S.W.3d 734, 738 (Tex.App.—Houston [14th Dist.] 1999, no pet.). Accordingly, Elgaghil's claims that he was retaliated against after filing a complaint with the EEOC are not jurisdictionally barred.[4] *See id.* at 738.

---

**3.** We are also aware of what appears to be contrary caselaw in *Pope v. MCI Telecomms. Corp.,* 937 F.2d 258, 263–64 (5th Cir.1991), *cert. denied,* 504 U.S. 916, 112 S.Ct. 1956, 118 L.Ed.2d 558 (1992). However, *Pope* involved the issue of whether the employee's retaliation complaint was time-barred under the applicable statute of limitations. *Id.* The *Pope* court did not consider whether the plaintiff's retaliation cause of action was "like or related to" the employee's initial charge. We thus believe *Pope* is distinguishable from both *Gupta* and the instant case on this issue.

## DID ELGAGHIL MAKE OUT A PRIMA FACIE CASE OF RETALIATION?

■ We must now decide whether the trial court correctly granted summary judgment on Elgaghil's retaliation claim. To establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in a protected activity, (2) an adverse employment action occurred, and (3) there was a causal connection between participation in the protected activity and the adverse employment decision. *See Gonzalez Jones v. Flagship Int'l,* 793 F.2d 714, 724 (5th Cir.1986), *cert. denied,* 479 U.S. 1065, 107 S.Ct. 952, 93 L.Ed.2d 1001 (1987). In this instance, TCJC alleged as a ground in support of its motion for summary judgment that there was no evidence of a causal connection between Elgaghil's original EEOC complaint and an adverse employment decision. Thus, if Elgaghil failed to bring forth more than a scintilla of probative evidence to raise a fact issue on this element, the trial court did not err in granting summary judgment on his retaliation cause of action. *See* TEX. R. CIV. P. 166a(i); *Havner,* 953 S.W.2d at 711.

■ Title VII and chapter 21 were designed to address ultimate employment decisions, not every action that occurs in the workplace that makes an employee unhappy. *See Messer v. Meno,* 130 F.3d 130, 140 (5th Cir.1997), *cert. denied,* 525

---

**4.** We note that TCJC also alleged that Elgaghil's retaliation claim was barred by limitations. *See* TEX. LAB. CODE ANN. § 21.202 (setting forth the statute of limitations for filing a complaint with the administrative agency). However, because Elgaghil was not required to file an additional EEOC complaint, his cause of action could not be barred under section 21.202.

U.S. 1067, 119 S.Ct. 794, 142 L.Ed.2d 657 (1999); *Mattern v. Eastman Kodak Co.,* 104 F.3d 702, 707 (5th Cir.), *cert. denied,* 522 U.S. 932, 118 S.Ct. 336, 139 L.Ed.2d 260 (1997). Ultimate employment decisions that are actionable include decisions to hire, discharge, promote, compensate, or grant leave, but not events such as disciplinary filings, supervisor's reprimands, or even poor performance reviews. *See Messer,* 130 F.3d at 140. Likewise, hostility from fellow employees, verbal threats to fire, reprimands, criticism of the employee's work, and negative employment evaluations do not constitute actionable adverse employment decisions. *See Mattern,* 104 F.3d at 707–08.

 In this case, Elgaghil alleged in his first amended petition that Gene Skowron, his supervisor, tried to intimidate him into transferring to TCJC's Southeast Campus, gave false reports that Elgaghil was insubordinate, and verbally harassed Elgaghil and ridiculed his accent. In his response to TCJC's motion for summary judgment, Elgaghil further alleged that he was written up for poor work performance, accused of sabotaging TCJC's equipment, and threatened with termination. As a matter of law, however, none of these actions are an adverse employment decision that will support a retaliation cause of action. *See Messer,* 130 F.3d at 140; *Mattern,* 104 F.3d at 707–08. Thus, the trial court did not err in granting TCJC's motion for summary judgment on Elgaghil's complaints about Skowron's behavior.

 Elgaghil also alleged that TCJC's failure to promote him in 1996 and 1997 was causally connected to the filing of his EEOC complaint in 1994. Again, to survive TCJC's no-evidence motion for sum-

mary judgment, Elgaghil was required to produce some evidence in support of this allegation. In his response, however, Elgaghil only alleged that Richardson, who made the hiring recommendations, "exhibited his hostile attitude toward [Elgaghil] by calling his EEOC complaint garbage." The only evidence to which Elgaghil referred the trial court in support of this contention is his own affidavit, in which Elgaghil claims that Richardson told Elgaghil to "stop sputtering garbage about TCJC." However, even assuming that Richardson made this remark, we do not believe that this qualifies as probative evidence that TCJC's failure to promote him was based on retaliatory motives. Elgaghil offered no evidence to establish that this remark was made regarding his EEOC complaint or that it was connected to TCJC's decision not to promote him. Because Elgaghil failed to offer any probative evidence to establish a causal connection between his protected activity and any adverse employment decision, the trial court did not err in granting TCJC's motion for summary judgment on Elgaghil's retaliation claims.

## DID THE TRIAL COURT ERR IN GRANTING SUMMARY JUDGMENT ON ELGAGHIL'S DISPARATE IMPACT CLAIM?

Having disposed of Elgaghil's retaliation and discrimination causes of action, we now consider his claim that TCJC engaged in an unlawful employment practice that had a disparate impact on Egyptians. Specifically, he complains that TCJC's interview check sheet was biased against "foreigners" whose first language was not English.[5] As with Elgaghil's retaliation claim, TCJC alleged in its motion for sum-

---

5. Elgaghil bases this contention on the fact that one of the many categories on the interview checklist for which each interviewee is scored is "diction." Elgaghil received a low score for this category, due in part to the fact that the interviewer had difficulty understanding him.

mary judgment that the trial court was without jurisdiction to consider this cause of action because Elgaghil failed to file an EEOC complaint raising this issue.

■ Unlike Elgaghil's retaliation claim, we have found no authority that would support an exception to the administrative filing requirement for disparate impact claims. Thus, unless this complaint was within the scope of an investigation that reasonably could have been expected to grow out of Elgaghil's original EEOC charge, the trial court was without jurisdiction to consider it. *See Fine*, 995 F.2d at 578. In this case, we believe it is unlikely that an investigation of Elgaghil's complaint that TCJC had intentionally discriminated against him would lead to the discovery of the alleged disparate impact caused by the school's hiring checklist. Because Elgaghil's disparate impact claim was not raised in his initial EEOC complaint and because it could not reasonably be expected to arise from the investigation of his original complaint, the trial court was without jurisdiction to consider it.

■ Furthermore, as one of its grounds in support of its motion for summary judgment, TCJC alleged that there was no evidence that it had engaged in an employment practice that had a disparate impact on Egyptians. To prevail on his disparate impact claim, the burden was on Elgaghil to show a particular employment practice that caused a disparate impact on the basis of national origin. *See* Tex. Lab. Code Ann. § 21.122. However, Elgaghil conceded in both his deposition testimony and in his appellate brief that he was not aware of any other members in his protected class who had been the subject of disparate impact as a result of TCJC's employment policies and procedures. Furthermore, Elgaghil offered no evidence other than his bare allegation that the business practice in question had an ad-

verse affect on anyone other than himself. Conclusory statements that are unsupported by facts are not proper summary judgment proof. *See Purcell v. Bellinger*, 940 S.W.2d 599, 602 (Tex.1997). Because Elgaghil failed to produce any probative evidence of an employment practice that had a disparate impact on his protected class, summary judgment was also proper on TCJC's no-evidence ground.

Because the trial court did not err in granting TCJC's first motion for summary judgment, we overrule issue one.

## ATTORNEY'S FEES

In his second point, Elgaghil alleges that the trial court erred in granting TCJC's second motion for summary judgment on its counterclaim for attorney's fees. The trial court's decision to grant TCJC's motion for summary judgment is based on section 21.259 of chapter 21, which provides "[i]n a proceeding under this chapter, a court may allow the prevailing party, other than the commission, a reasonable attorney's fee as part of the costs." Tex. Lab. Code Ann. § 21.259(a).

Although we find no state cases construing the application of this section to a prevailing *defendant* in an employment discrimination case, the Fifth Circuit has interpreted this statute by applying the federal standard for Title VII cases that was adopted in *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 420–22, 98 S.Ct. 694, 699–701, 54 L.Ed.2d 648 (1978). *See Pope v. MCI Telecomms. Corp.*, 937 F.2d 258, 267 (5th Cir.1991), *cert. denied*, 504 U.S. 916, 112 S.Ct. 1956, 118 L.Ed.2d 558 (1992). Under *Christiansburg*, a district court has discretion to award attorney's fees to a prevailing employer in an employment discrimination case, provided the plaintiff's claims were frivolous, meritless, or unreasonable, or the plaintiff continued to litigate after it became clear that

his claim was frivolous. *Christiansburg*, 434 U.S. at 421–22, 98 S.Ct. at 700–01. However, attorney's fees are not appropriate simply because the plaintiff loses his case. *Id.* at 421, 98 S.Ct. at 700. Rather, to show that a lawsuit was without merit, the defendant must establish that the case was groundless or without foundation. *Id.*

▮ Here, Elgaghil contends that he established through his brief and evidence that his case was not frivolous, unreasonable, or vexatious as a matter of law. Other than this conclusory statement, however, he offers no explanation of why the trial court's decision to award attorney's fees was an abuse of discretion. Thus, this point is arguably waived on appeal as inadequately briefed. *See* Tex. R. App. P. 38(h) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."). Even on the merits, however, Elgaghil does not succeed. First, the trial court had no jurisdiction over Elgaghil's disparate impact claim because he failed to exhaust his administrative remedies. Regarding Elgaghil's discrimination claim, he produced no probative evidence to show that TCJC's non-discriminatory reason was untrue and pretextual. Finally, on his retaliation claim, Elgaghil failed to offer any probative evidence to establish a causal connection between his protected activity and any adverse employment action. Under these facts, we hold that TCJC established as a matter of law that Elgaghil's claims were groundless. *See Pope*, 937 F.2d at 267–68. Because the trial court did not err in granting summary judgment in favor of TCJC on the issue of attorney's fees, we overrule issue two.

**CONCLUSION**

In summary, the trial court did not err in granting TCJC's motion for summary judgment on Elgaghil's discrimination, disparate impact, and retaliation claims. Elgaghil failed to point out any probative evidence to show that TCJC's non-discriminatory explanation for not promoting him was pretextual or that TCJC had engaged in an employment practice that caused a disparate impact on Elgaghil's protected class. Regarding his retaliation claim, most of the acts raised by Elgaghil are not adverse employment decisions that are actionable under chapter 21. To the extent that Elgaghil complains that TCJC wrongfully retaliated against him by failing to promote him, he failed to establish a causal connection between his initial EEOC complaint and any adverse employment action, as required to make out a prima facie case. Finally, TCJC established that it was entitled to summary judgment on its counterclaim for attorney's fees because Elgaghil's claims were groundless as a matter of law.[6]

Having overruled both of Elgaghil's issues, we affirm the trial court's orders granting summary judgment in favor of TCJC.

---

**6.** Because the trial court's orders granting summary judgment are correct for the reasons stated in this opinion, we need not address Elgaghil's remaining arguments challenging TCJC's additional summary judgment grounds. *See Star–Telegram*, 915 S.W.2d at 473.