# NO. 12-22-00078-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JOSUE E. TOVAR,*<br>*APPELLANT* | § | *APPEAL FROM THE* |
| *V.* | | |
| | § | *COUNTY COURT AT LAW NO. 2* |
| *WRIGHT-WAY MAINTENANCE, LLC*<br>*AND WRIGHT-WAY EQUIPMENT,*<br>*LLC,*<br>*APPELLEES* | § | *SMITH COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

In two issues, Josue E. Tovar appeals the grant of summary judgment in favor of Wright-Way Maintenance, LLC and Wright-Way Equipment, LLC. We affirm.

### BACKGROUND

Wright-Way Maintenance, LLC is a property management company that contracts with rental property owners, including hiring Wright-Way Equipment, LLC (Wright-Way) to perform the actual management work. In 2020, Wright-Way contracted with Express Employment Professionals to fill a maintenance technician position. In June 2020, Express placed Tovar in that position. Under the arrangement, Tovar was initially employed by Express but worked for Wright-Way during a probationary period. At the end of the probationary period, Wright-Way could choose to hire Tovar directly.

On August 7, Yvonne Wright, Wright-Way's managing member, corresponded via e-mail with an Express representative to voice concerns about Tovar. She stated that "he is slow to admit what he doesn't know and he is [a] little bit lacking in his detail." There were also concerns regarding a lack of urgency in the completion of his work. However, Wright hoped Tovar would "get[] the kinks worked out by his 90 [day probationary period]." Wright spoke

1

with Tovar's supervisor at Wright-Way, Nikki Andrews, and they decided to "try a few new things with his scheduling" to see if Tovar would "speed up."

On August 21, a tenant complained to Wright-Way about the condition of her rental property. Specifically, property from the prior tenant remained in the home. In an e-mail to her coworker, Andrews claimed she specifically told Tovar to remove those items during the "make ready."[1] Wright-Way hired Tovar as its direct employee on August 24. In September, Tovar was asked to drive to a gated community and confirm that a gate clicker worked. The tenant later complained that the gate clicker did not work. On September 30, Tovar failed to remove trash from the storage room of another property.

On October 1, Tovar slipped and fell at a rental property. The next day, he went to the doctor and filed a workers' compensation claim.

On October 8, Tovar failed to clean an oven during a "make ready." On October 16, Tovar received his first written reprimand regarding another failure to remove trash during a "make ready." Specifically, that warning stated, "Not paying attention to detail on make readies; marking items completed when they aren't. Left trash in yard at property. Then lied when asked about it. Tenant had to send pics of mountain of trash in their yard." Tovar received another written reprimand on October 22 for "not delivering notices properly. . . [n]ot taking keys and posting the notice inside the door." Tovar responded that he had not been instructed or trained on how to properly post eviction notices. On October 22, Tovar was placed on probation for "not paying attention [to] directions. Failing to complete scheduled jobs. Not making it to scheduled appointments." Tovar denied knowledge of the scheduled job he missed and claimed that he had a doctor's appointment.

Citing poor job performance, Wright-Way fired Tovar on November 23. The comments on the termination form listed "failure to maintain schedule, failure to complete scheduled tasks, consistently reporting tasks as complete when they are not" as the reasons for termination. It also listed three more incidents in which Tovar failed to adequately complete "make readies" during his probation.

Tovar filed suit against Wright-Way and Wright-Way Maintenance, alleging he was fired in retaliation for filing a workers' compensation claim. The Wright-Way entities filed a no-evidence and traditional motion for summary judgment, urging that Tovar could not show a

---

[1] A "make ready" is the term Wright-Way uses when it prepares a property for a new tenant.

causal link between his termination and his workers' compensation claim. Following a hearing, the trial court granted the motion for summary judgment without stating the grounds for its ruling. This appeal followed.

### SUMMARY JUDGMENT

In two issues, Tovar urges the trial court erred in granting the Wright-Way entities' no-evidence and traditional motion for summary judgment. As explained below, we address these issues together.

## Standard of Review

We review a summary judgment de novo. *Travelers Ins. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).

Usually, when a party moves for summary judgment under both Rules 166a(c) and 166a(i), we will first review the trial court's judgment under the standards of Rule 166a(i). *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). But we need not follow this practice when dealing with a hybrid motion for summary judgment. *Neely v. Wilson*, 418 S.W.3d 52, 59 (Tex. 2013) ("Though these burdens vary for traditional and no-evidence motions, the summary judgment motion here was a hybrid motion[,] and both parties brought forth summary judgment evidence; therefore, the differing burdens are immaterial and the ultimate issue is whether a fact issue exists.") (citing *Buck v. Palmer*, 381 S.W.3d 525, 527 & n.2 (Tex. 2012)); *Reynolds v. Murphy*, 188 S.W.3d 252, 258 (Tex. App.—Fort Worth 2006, pet. denied) (op. on reh'g) (initially reviewing the propriety of traditional summary judgment despite fact that both no-evidence and traditional summary judgment motions were filed).

In a traditional summary-judgment case, the issue on appeal is whether the movant met the summary-judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008); *Provident Life & Accident Ins. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). We also consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could and disregarding evidence contrary to the

3

nonmovant unless reasonable jurors could not. *Mann Frankfort*, 289 S.W.3d at 848. We must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all the evidence presented. *See Wal-Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 568 (Tex. 2006); *City of Keller v. Wilson*, 168 S.W.3d 802, 822–24 (Tex. 2005).

A defendant that conclusively negates at least one essential element of a plaintiff's cause of action is entitled to summary judgment on that claim. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010). Once the defendant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the plaintiff to come forward with competent controverting evidence that raises a fact issue. *Van v. Peña*, 990 S.W.2d 751, 753 (Tex. 1999). If less than a scintilla of probative evidence exists in the plaintiff's favor, a fact issue is not raised, and summary judgment is proper. *Neely*, 418 S.W.3d at 59.

## Applicable Law

Section 451.001 of the Texas Labor Code protects an employee from retaliatory discharge for filing a workers' compensation claim in good faith. *See* TEX. LAB. CODE ANN. § 451.001(1) (West 2006). "An employer who violates this statute is subject to a retaliation claim, which constitutes an exception to the traditional doctrine of employment at will found in Texas law." *Kingsaire, Inc. v. Melendez*, 477 S.W.3d 309, 312 (Tex. 2015) (quoting *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 453 (Tex. 1996) (internal quotation marks omitted)).

To prevail in a workers' compensation retaliation action, the plaintiff has the burden of making a prima facie showing that he, in good faith, filed a workers' compensation claim and that there is a causal link between his filing of the claim and his discharge or other act of discrimination by his employer. *See* TEX. LAB. CODE ANN. § 451.001(1); *Cardenas v. Bilfinger TEPSCO, Inc.*, 527 S.W.3d 391, 399 (Tex. App.—Houston [1st Dist.] 2017, no pet.). To establish a causal link between his firing and his filing of a workers' compensation claim, a plaintiff must demonstrate that the employer's prohibited action would not have occurred when it did absent the employee's protected conduct. *Melendez*, 477 S.W.3d at 319; *see also Cont'l Coffee*, 937 S.W.2d at 450 (the "would not have occurred when it did" standard of causation applies in an anti-retaliation case). "While an employee is not required to show that the filing of the workers' compensation claim was the sole cause of the alleged discriminatory behavior, she must establish that 'but for' the filing of the claim the termination would not have occurred when

it did." ***Hernandez v. Am. Tel. & Tel. Co.***, 198 S.W.3d 288, 291 (Tex. App.—El Paso 2006, no pet.).

In establishing a causal link between his discharge and his workers' compensation claim, an employee may rely either on direct or circumstantial evidence. ***Melendez***, 477 S.W.3d at 312; ***Hernandez***, 198 S.W.3d at 291. Regarding circumstantial evidence, the Texas Supreme Court has identified factors that—if proven by the employee—are considered evidence of such a causal link. ***Cont'l Coffee***, 937 S.W.2d at 451. These factors, known as the ***Continental Coffee*** factors, are (1) knowledge of the compensation claim by those making the decision on termination; (2) expression of a negative attitude toward the employee's injured condition; (3) failure to adhere to established company policies; (4) discriminatory treatment in comparison to similarly situated employees; and (5) evidence that the stated reason for the discharge was false. ***Id***. Courts may also consider the temporal proximity of the termination to the date of the injury or claim. ***Echostar Satellite L.L.C. v. Aguilar***, 394 S.W.3d 276, 288 (Tex. App.—El Paso 2012, pet. denied). While no one factor is determinative and an employee is not required to produce evidence on all such factors, a retaliation plaintiff must produce "sufficient circumstantial evidence on a majority of these factors." ***Armendariz v. Redcats USA, L.P.***, 390 S.W.3d 463, 469 (Tex. App.—El Paso 2012, no pet.). "This evidence is relevant for determining whether a causal link exists, both in examining whether the employee established a prima facie case and the ultimate issue of whether the employee proved a retaliatory motive for the adverse employment action." ***Parker v. Valerus Compression Servs., LP***, 365 S.W.3d 61, 67 (Tex. App.—Houston [1st Dist.] 2011, pet. denied).

Once the employee establishes a prima facie claim to include a causal link, the burden shifts to the employer to rebut the alleged discrimination by offering proof of a legitimate, non-discriminatory reason for its actions. ***Id***. If the employer demonstrates a legitimate, non-discriminatory reason, then the burden shifts back "to the employee 'to produce controverting evidence of a retaliatory motive' in order to survive a motion for summary judgment." ***Id***. (quoting ***Green v. Lowe's Home Ctrs., Inc.***, 199 S.W.3d 514, 519 (Tex. App.—Houston [1st Dist.] 2006, pet. denied)). "The employee must present evidence that the employer's asserted reason for the discharge or other adverse employment action was pretextual or 'challenge the employer's summary judgment evidence as failing to prove as a matter of law that the reason given was a legitimate, nondiscriminatory reason.'" ***Id***. at 67–68 (quoting ***Benners v. Blanks***

***Color Imaging, Inc.***, 133 S.W.3d 364, 369 (Tex. App.—Dallas 2004, no pet.)). Summary judgment is proper if the employee fails to produce controverting evidence. ***Id***. at 68.

**Analysis**

On appeal, Tovar urges that he provided evidence of a causal link and created a factual dispute regarding the falsity of Wright-Way's stated reasons for his termination.

*Prima Facie Case*

First, Tovar must establish a prima facie case to create a presumption of retaliation. The causal link required between the protected activity and the adverse employment action is not onerous and does not rise to the level of a "but for" standard. ***See Alamo Heights Ind. Sch. Dist. v. Clark***, 544 S.W.3d 755, 782 (Tex. 2018). Instead, Tovar can prove his prima facie case merely by proving close timing between the protected activity and the adverse action. ***Id.*** Here, we agree that Tovar presented a prima facie link of temporal proximity. The record evidences that Tovar was injured on October 1, 2020, he filed his workers' compensation claim on October 2, and he was terminated on November 23. Because less than two months passed between Tovar's injury and his termination, we hold there is sufficient evidence of a prima facie case to create a presumption of retaliation. ***See Tex. Dep't of Motor Vehicles v. Bustillos***, 630 S.W.3d 316, 332 (Tex. App.—El Paso 2021, no pet.) (temporal proximity sufficient to establish prima facie case to create presumption of retaliation).

*Legitimate, Non-Retaliatory Reason for Termination*

Because Tovar met his prima facie burden, the burden shifted to Wright-Way to present a legitimate, non-retaliatory reason for Tovar's termination. ***See Alamo Heights***, 544 S.W.3d at 782 ("If the employee can establish a prima facie case of discrimination, a rebuttable presumption of discrimination arises, which can alone sustain a discrimination claim. But the employer can defeat this presumption merely by producing evidence of a legitimate, nondiscriminatory reason for the disputed employment action.").

Wright-Way urges that it fired Tovar for poor job performance. In support of its assertion, Wright-Way attached evidence of seven warnings and reprimands that both predated and postdated Tovar's injury. According to Wright-Way, all of the reprimands dealt with Tovar's failing to complete tasks and lying about it.

Wright-Way presented evidence that it issued verbal reprimands to Tovar in August, September, and October. On August 21, a tenant complained that the yard had not been mowed

and the house had not been properly cleaned prior to move-in. On September 11, Tovar failed to ensure a gate clicker worked for a new tenant. And on September 30, Tovar failed to remove the trash from a storage room at a property. On October 8, Tovar failed to clean an oven at a property.

On October 16, Tovar received a written reprimand for failing to pay "attention to detail on make readies. Marking items complete when they aren't. Left trash in yard at property. Then lied when asked about it. Tenant had to send pics of mountain of trash in their yard." He received another written reprimand on October 22 for "not delivering notices properly." And he was placed on probation that same afternoon for "not paying attention to directions, failing to complete scheduled jobs" and "not making it to scheduled appointments." Tovar was then terminated on November 23 for failing to maintain his schedule, failing to complete scheduled tasks, and incorrectly reporting tasks as completed.

Because Wright-Way produced summary judgment evidence that it fired Tovar based on his unsatisfactory performance, it met its burden of showing a legitimate, non-retaliatory reason for his termination. *See Valles v. McLane Foodservice, Inc.,* No. 02-17-00134-CV, 2018 WL 547782, at *5 n.9 (Tex. App.—Fort Worth Jan. 25, 2018, no pet.) (mem. op.) ("McLane's produced summary-judgment evidence shows that it fired Valles based on his subpar performance and violation of its work rules, which is a legitimate, nondiscriminatory reason as a matter of law"); *E.E.O.C. v. LHC Group, Inc.*, 773 F.3d 688, 701-02 (5th Cir. 2014) (terminating an employee based on unsatisfactory performance is legitimate and nondiscriminatory as a matter of law).

*Pretext*

Next, we examine the *Continental Coffee* factors and whether they circumstantially create a causal link between Tovar's workers' compensation claim and his termination, i.e., whether Wright-Way's offered reason for the termination was a pretext. As previously discussed, those factors include (1) knowledge of the compensation claim by those making the termination decision, (2) expression of a negative attitude toward the employee's injured condition, (3) failure to adhere to established company policies, (4) discriminatory treatment in comparison to similarly situated employees, and (5) evidence that the stated reason for the discharge was false. *Cont'l Coffee*, 937 S.W.2d at 451. As discussed below, we conclude that

7

the summary-judgment record does not create a fact question as to whether Wright-Way's offered reason for Tovar's termination was pretextual.

First, there is no question that the person responsible for terminating Tovar's employment was aware of his workers' compensation claim. The day after his injury, Wright filed the first injury report for Tovar's workers' compensation claim. However, that knowledge, standing alone, is insufficient to establish a causal connection between the filing of the compensation claim and termination. *See McClendon v. Deep East Tex. Prop. Mgmt., LLC*, No. 12-12-00331-CV, 2014 WL 1308618, at \*6 (Tex. App.—Tyler Mar. 31, 2014, no pet.) (mem. op.).

Second, there is no evidence in the record of a negative attitude toward Tovar's injured condition. And Tovar does not claim that Wright-Way expressed a negative attitude toward his injury or his workers' compensation claim.

Third, regarding adherence to company policies, Wright-Way's employee handbook provides for a graduated disciplinary procedure. This procedure starts with verbal reprimands and advances to written reprimands, counseling, administrative probation, and eventually termination. The procedure specifically states that employees are allowed no more than three reprimands in a calendar year. There is no indication Wright-Way applied its policy in a way that negatively impacted Tovar. The evidence actually suggests the opposite—that it gave Tovar more chances than required under its policy. Application of a policy in a fashion that benefits an employee is not evidence of pretext. *See Tawil v. Cook Children's Healthcare Sys.*, 582 S.W.3d 669, 690 (Tex. App.—Fort Worth 2019, no pet.).

Fourth, the summary judgment record contains no evidence that an employee whose circumstances are comparable to Tovar's in all material aspects—including similar standards, supervisors, and conduct—was treated differently than Tovar. *See Parker*, 365 S.W.3d at 69. Furthermore, Tovar does not argue that he was treated differently than similarly situated employees.

Finally, the crux of Tovar's argument is that the stated reasons for his termination are false. Wright-Way's stated reasons for firing Tovar regarded what they considered poor performance. This included allegations that Tovar repeatedly and consistently reported that make readies were complete when they were not, failed to maintain his assigned schedule, and failed to complete scheduled tasks. Wright-Way's assertions were supported by internal emails documenting concerns and written reprimands.

In response, Tovar points to his deposition testimony urging that Wright-Way never presented him with the alleged verbal reprimands or concerns about his performance and any deficiencies in his performance were due to a lack of training. He claims there is no evidence that the verbal reprimands were presented to him. He further asserts that some of the alleged deficiencies concerned work outside his scope of duties. Specifically, he contends it was not his responsibility to assign and program the gate clickers or to clean ovens for "make readies." He blamed the cleaning crew for the failure to clean the oven referenced in the October 22 reprimand. He also claimed he was not properly instructed on the posting of eviction notices.

However, an employee's subjective belief that an employer's reason for his termination is false cannot alone supply a basis for such a finding. *See Alamo Heights*, 544 S.W.3d at 792; *Bustillos*, 630 S.W.3d at 333; *see also Hous. Auth. of City of El Paso v. Guerra*, 963 S.W.2d 946, 950 (Tex. App.—El Paso 1998, pet. denied) ("An employee's subjective belief alone is not enough to support the causal connection required for a workers' compensation retaliation cause of action."); *Elgaghil v. Tarrant Cty. Junior Coll.*, 45 S.W.3d 133, 141 (Tex. App.—Fort Worth 2000, pet. denied) ("The only other evidence [the employee] offers to establish pretext is his own speculation that [the employer] lied about its reasons for refusing to promote him. However, an employee's subjective belief that an employer has given a false reason for its employment decision is not competent summary judgment evidence."). Tovar's own speculation that Wright-Way lied about the reasons for terminating him is simply insufficient to prove pretext. *See Elgaghil*, 45 S.W.3d at 141.

Furthermore, Tovar failed to contradict Wright-Way's stated reasons for firing him. He did not present evidence that he performed his job well and completed tasks as assigned, completed his scheduled assignments timely, or completed make readies sufficiently. Instead, his proffered evidence suggests that his employer's termination decision was based on an incorrect conclusion about his actions, which is not tantamount to evidence that Wright-Way engaged in a retaliatory decision. *Bustillos*, 630 S.W.3d at 334 ("evidence that an employer's termination decision was based on an incorrect conclusion about an employee's actions is not the same as evidence that the employer engaged in a discriminatory decision"); *see Alamo Heights*, 544 S.W.3d at 791–92 ("The issue is whether the employer's perception of the problems– accurate or not–was the real reason for termination."); *Chandler v. CSC Applied Techs., LLC*, 376 S.W.3d 802, 818 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) ("When an employer's

9

decision to terminate a claimant's employment is based on the results of an investigation into whether the claimant violated workplace rules, 'evidence that the employer's investigation merely came to an incorrect conclusion does not establish a racial motivation behind an adverse employment decision. *Management does not have to make proper decisions, only non-discriminatory ones.*'") (emphasis added); *see also* **Lund v. Tex. Health & Human Servs. Comm'n**, No. 04-17-00625-CV, 2019 WL 1049347, at *10 (Tex. App.—San Antonio Mar. 6, 2019, pet. denied) (mem. op.) (holding that the employer's decision to terminate employee was founded on uncontroverted proof of misconduct where: (1) employee did not contest that she improperly accessed records in violation of employer's policy, and (2) employee instead attempted to excuse her actions by claiming that, while she accessed records, she did not intend to violate policy). Therefore, even accepting Tovar's evidence regarding his lack of training as true, as we must, we are not persuaded by his use of this evidence to buttress an argument that Wright-Way terminated his employment based on a retaliatory motive.

We have examined each of the **Continental Coffee** factors, the summary-judgment record, and Tovar's arguments, and we conclude that he has failed to produce evidence to sustain a majority of the **Continental Coffee** factors. The trial court could reasonably conclude that Tovar failed to raise a fact question on the issue of whether Wright-Way's proffered reasons for terminating Tovar's employment were pretextual.

### Summation

For the above reasons, we conclude that the trial court properly granted summary judgment in favor of the Wright-Way entities. We overrule Tovar's first and second issues.

### DISPOSITION

Having overruled Tovar's two issues, we ***affirm*** the trial court's judgment.

JAMES T. WORTHEN
Chief Justice

Opinion delivered February 15, 2023.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

10



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**FEBRUARY 15, 2023**

**NO. 12-22-00078-CV**

**JOSUE E. TOVAR,**
Appellant
V.
**WRIGHT-WAY MAINTENANCE, LLC**
**AND WRIGHT-WAY EQUIPMENT, LLC,**
Appellees

Appeal from the County Court at Law No. 2
of Smith County, Texas (Tr.Ct.No. 73063-A)

THIS CAUSE came to be heard on the oral arguments, appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, all costs of this appeal are assessed against Appellant, **JOSUE E. TOVAR**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*